**Thomas FOSTER and Coralie J. Foster, Plaintiffs,**

v.

**The FEDERAL EMERGENCY MANAGEMENT AGENCY, et al., Defendants.**

**No. 14–CV–1750 JFB AKT.**

United States District Court, E.D. New York.

Signed Sept. 15, 2015.

Gary B. Port, George Samuel Sava, Port and Sava, Lynbrook, NY, for Plaintiffs.

James Halleron Knapp, Thomas A. McFarland, United States Attorneys Office, Central Islip, NY, Gail M. Kelly, Anne Marie Esposito, Conway Farrell Curtin and Kelly P.C., Anne Marie Esposito, Conway Farrell Curtin & Kelly, P.C., Joseph L. Francoeur, Wilson Elser, New York, NY, Michael B. Beers, Butler Snow LLP, Montgomery, AL, A. David Fawal, Butler Snow LLP, Birmingham, AL, Patrick T. Bergin, Butler Snow LLP, Gulfport, MS, Sheryl Parker, Wilson Elser Moskowitz Edelman & Dicker LLP, West Harrison, NY, for Defendants.

## MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge:

On March 18, 2014, plaintiffs Thomas Foster and Coralie J. Foster ("plaintiffs" or "the Fosters") filed this flood insurance action, bringing claims against the Federal Emergency Management Agency ("FEMA"), Allstate Insurance Company ("Allstate"), and Alan Aronson (collectively, "defendants"). Allstate Insurance Company is a "Write Your Own" ("WYO") flood insurance carrier and the issuer of a flood insurance policy covering plaintiff's residence in Cedarhurst, New York. The instant action rises from Allstate's denial of plaintiffs' insurance claim seeking coverage for the damage their property sustained during Hurricane Sandy.

Plaintiffs bring the following claims against FEMA: (1) a request for relief under 28 U.S.C. §§ 2201, 2202 and a judgment by the Court that the defendants are obligated to pay their insurance claim in full; (2) breach of contract; (3) negligence; (4) breach of fiduciary duty; (5) aiding and abetting a breach of fiduciary duty; (6) unjust enrichment by FEMA; (7) promissory estoppel; (8) respondent superior and vicarious liability by agents and employees of FEMA; (9) intentional infliction of emotional distress; (10) negligent infliction of emotional distress; (11) breach of express and implied covenants; and (12) equitable estoppel.

FEMA now moves to dismiss plaintiffs' claims against it for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), because sovereign immunity shields federal agencies from suit and FEMA has not waived its immunity, and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) because: (1) plaintiffs failed to exhaust administrative remedies under the Federal Tort Claims Act ("FTCA");[1] (2) plaintiffs'

---

1. As a threshold matter, though FEMA raises this issue under Rule 12(b)(1), the Supreme Court recently held in *United States v. Wong*, —— U.S. ——, 135 S.Ct. 1625, 1638, 191 L.Ed.2d 533 (2015), that the FTCA's time bar is nonjurisdictional (and subject to equitable tolling). *See also Torres v. United States*, 612 Fed.Appx. 37, 41 (2d Cir.2015) ("[A]lthough the district court was correct that the statute

promissory estoppel claim is not actionable against the federal government; (3) plaintiffs' claims of breach of fiduciary duty (and aiding and abetting breach of fiduciary duty) fail, because the Fosters did not have a fiduciary relationship with FEMA; and (4) plaintiffs' claims for unjust enrichment and breach of express and implied covenants are insufficiently pled and are likely encompassed within the breach of contract claim. For the reasons discussed below, the Court grants FEMA's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), and also grants FEMA's motion to dismiss plaintiffs' FTCA claims. Accordingly, the plaintiffs' claims against FEMA are dismissed.[2]

## I. BACKGROUND

### A. Facts

The following facts are taken from the complaint, and are not findings of fact by the Court. Instead, the Court will assume the facts to be true and, for purposes of the pending motion to dismiss, will construe them in a light most favorable to the plaintiff, the non-moving party. The Court also considers the exhibits and affidavits attached to the parties' moving papers for purposes of considering FEMA's motion under Rule 12(b)(1).

### 1. The National Flood Insurance Program

Congress passed the National Flood Insurance Act ("NFIA") in 1968, codified at 42 U.S.C. § 4001 et seq., with the purpose of instituting "a reasonable method of sharing the risk of flood losses" by subsidizing flood insurance through private insurers. 42 U.S.C. §§ 4001(a)-(b). NFIA established the National Flood Insurance Program ("NFIP"), which is "administered by [FEMA and] supported by the federal treasury, which pays for claims that exceed the revenues collected by private insurers from flood insurance premiums." *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 183 (2d Cir.2006). The NFIP includes two separate types of government-financed flood insurance. Under the first, known as the "Direct program" or the "Government program," NFIP policyholders are insured directly by FEMA. In the Direct program, "the government 'run[s] the NFIP itself—offering federally underwritten policies—with the potential for administrative assistance from private insurers.'" *Id.* at 183 (quoting *Downey v. State Farm Fire & Cas. Co.*, 266 F.3d 675, 678 (7th Cir.2001)) (citing 42 U.S.C. §§ 4071–4072). Under the second program (the "WYO program"), which is authorized under 42 U.S.C. § 4081(a), NFIP policyholders are insured by participating WYO companies. "Although FEMA may issue policies directly under the Government Program, 'more than 90% are written by WYO companies.'" *Id.* (quoting *C.E.R. 1988, Inc. v. Aetna Cas. and Surety Co.*, 386 F.3d 263, 267 (3d Cir.2004)).

of limitations bars Torres's FTCA claim, that conclusion requires a dismissal on substantive, not jurisdictional, grounds."). Although *Wong* was addressing a statute of limitations issue under 28 U.S.C. § 2401(b), this Court concludes that the analysis in *Wong* applies with equal force to the presentment and exhaustion requirements of 28 U.S.C. § 2675. *See Bastien v. Samuels*, 14–CV–1561 (JFB)(AKT), 2015 WL 5008837, at *1 (E.D.N.Y. Aug. 21, 2015); *Marcus v. U.S. Postal Service*, No. 14–CV–330 (JFB)(SIL), 2015 WL 2389955, at *1 (E.D.N.Y. May 20, 2015); *see also Carelock v. U.S.*, No. 14–CV– 3594 (RA), 2015 WL 5000816, at *5 (S.D.N.Y. Aug. 20, 2015); *Garcia v. McClaskey*, No. 12– CV–93, 2015 WL 5007885, at *3 (M.D.N.C. Aug. 20, 2015). Therefore, this issue cannot be decided under Rule 12(b)(1), but rather must be considered under Rule 12(b)(6).

**2.** Having concluded that the Court lacks subject matter jurisdiction over plaintiffs' claims against FEMA under the National Flood Insurance Act ("NFIA"), the Court declines to consider whether plaintiffs' remaining nontort claims also warrant dismissal under Rule 12(b)(6).

Under the WYO program, private insurance companies have the authority to sell federally backed Standard Flood Insurance Policies (SFIPs) pursuant to the procedures outlined in 44 C.F.R. § 62.23. A SFIP is a "flood insurance policy issued by the Federal Insurance Administrator or an insurer pursuant to an arrangement with the Federal Insurance Administrator pursuant to Federal statutes and regulations." 44 C.F.R. § 59.1. Specifically, the Code of Federal Regulations provides that "[a] WYO Company is authorized to arrange for the issuance of flood insurance in any amount within the maximum limits of coverage specified in . . . [the federal regulations]" and "shall arrange for the adjustment, settlement, payment and defense of all claims arising from policies of flood insurance it issues under the Program." 42 C.F.R. § 62.23(c), (d).

Under the terms of the WYO program the "Federal Insurance Administrator will enter into arrangements with [WYO] companies whereby the Federal Government will be a guarantor in which the primary relationship between the WYO Company and the Federal Government will be one of a fiduciary nature, i.e., to assure that any taxpayer funds are accounted for and appropriately expended." 44 C.F.R. § 62.23(f); *see also C.E.R. 1988*, 386 F.3d at 267 (noting that the WYO "private insurers may act as fiscal agents of the United States, but they are not general agents. Thus they must strictly enforce the provisions set out by FEMA and may vary the terms of a Policy only with the express written consent of the Federal Insurance Administrator.") (internal citations and quotations omitted).[3] Further-

more, the regulations state that "[a] WYO Company shall act as a fiscal agent of the Federal Government, but not as its general agent. WYO Companies are solely responsible for their obligations to their insured under any flood insurance policies issued under agreements entered into with the Federal Insurance Administrator, such that the Federal Government is not a proper party defendant in any lawsuit arising out of such policies." 44 C.F.R. § 62.23(g).

NFIP policyholders, participating in either the WYO program or the Direct program, "may appeal a decision, including a determination of any insurance agent, adjuster, insurance company, or any FEMA employee or contractor with respect to a claim, proof of loss, and loss estimate" directly with FEMA pursuant to the procedures outlined in 44 C.F.R. § 62.20. 44 C.F.R. § 62.20(b)-(e).

### 2. The Fosters' Insurance Claim

When Hurricane Sandy hit Long Island on October 29, 2012, the Fosters' residence, located at 428 Rugby Road, Cedarhurst, New York ("the property") sustained property damage in excess of $220,000. (Compl. ¶¶ 2, 30.) The property is located within a Flood Zone, and the Foster's mortgage with J.P. Morgan Chase requires flood insurance. (*Id.* ¶ 31.) The Foster's flood insurance policy ended on September 11, 2012, but included a 30–day grace period in which to extend coverage. (*Id.* ¶ 31.) The Fosters negotiated the terms of their insurance renewal with Allstate insurance broker Alan Arson between September 11, 2012 and October 11, 2012. (*Id.* ¶ 32.) On October 22, 2012,

---

3. "Congress has authorized FEMA to 'prescribe regulations establishing the general method or methods by which proved and approved claims for losses may be adjusted and paid for any damage to or loss of property which is covered by flood insurance.'" *Jacobson v. Metro. Prop. & Cas. Ins. Co.*, 672

F.3d 171, 174 (2d Cir.2012) (quoting 42 U.S.C. § 4019). "This regulatory scheme, including the terms and exact language of the SFIP, is recorded in the Code of Federal Regulations." *Id.* (citing 44 C.F.R. §§ 61.1–78.14.).

Allstate issued the Fosters a flood insurance policy (the "policy"), which listed the effective date of the policy as October 23, 2012. (*Id.* ¶ 33.) At the time of issue, the Fosters allege that Allstate and Arson did not inform them that "the policy was a new policy or that there was any lapse or gap in coverage from the previous policy" or "that a 30–day rule would apply, which prohibited coverage ... for a thirty (30) day period." (*Id.* ¶ 32.) The policy was issued through the NFIP's WYO program. (*Id.* ¶¶ 3, 9.) The policy provided for coverage of up to $200,000 for the residence's structure and up to $80,000 for the contents of the home. (*Id.*) The policy has a $1,000 deductible. (*Id.* ¶ 33.)

On November 4, 2012, the Fosters filed an insurance claim seeking coverage for the damage their property sustained during Hurricane Sandy. (*Id.* ¶ 33.) After an Allstate adjuster inspected the Fosters' property, Allstate sent them an advance check in the amount of $10,000 on or around November 26, 2012. (*Id.* ¶ 34.) Allstate sent the Fosters a second $10,000 check on or around December 5, 2012. (*Id.* ¶ 35.) Around January 25, 2013, the Fosters received a payment from Allstate in the amount of $42,349.77 covering the structural damage to their property, and another payment of $27,693.14 on or around March 12, 2013 covering the damages to the contents of their residence. (*Id.* ¶¶ 43, 45.)

However, on March 21, 2013, an Allstate employee notified the Fosters that their flood insurance claim was denied in full. (*Id.* ¶ 46.) Allstate informed the Fosters that "because they were issued a new policy on October 22, 2012, there was a thirty (30) day lag period which prevented coverage," but noted that the waiting period would be waived if the terms of the Fosters' mortgage mandated flood insurance. (*Id.* ¶ 47.) In a letter dated March 19, 2013, Allstate formally denied the Fosters'

claim, on the grounds that the hurricane damage occurred within the 30–day waiting period and, as a result, the Fosters' policy was not effective until November 23, 2012. (*Id.* ¶¶ 48, 53.) The letter requested that the Fosters return the $52,349.77 previously paid by Allstate. (*Id.* ¶ 54.)

Sixty days after receiving Allstate's formal denial letter, the Fosters appealed the denial decision to FEMA under 44 C.F.R. § 62.20. (*Id.* ¶ 61.) On November 4, 2013, FEMA issued a letter affirming Allstate's denial decision on the grounds that the damage occurred during the 30–day waiting period. (*Id.* ¶ 62.) Plaintiffs assert that "[b]y their individual and collective conduct FEMA and Allstate have denied a bone fide flood claim in violation of the Flood Policy, federal law, and common law and statute." (*Id.* ¶ 64.)

### B. Procedural History

Plaintiff commenced this action on March 18, 2014. On December 22, 2014, FEMA filed a motion to dismiss the claims against it. On January 26, 2015, plaintiffs filed a memorandum in opposition to FEMA's motion. Plaintiffs also filed sealed documents in support of their opposition papers on February 4, 2015. On February 13, 2015, FEMA filed a reply memorandum in further support of its motion to dismiss. The Court has fully considered the parties' submissions.

### II. MOTION TO DISMISS

### A. Standard of Review, Rule 12(b)(1)

When a court reviews a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favourable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). The burden of proving subject matter jurisdiction by a preponderance of

the evidence is on the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir.2005). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings" to resolve the jurisdictional issue. *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000) (citing *Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir. 1986)).

Federal courts are courts of limited jurisdiction and may not preside over cases if subject matter jurisdiction is lacking. *Lyndonville Sav. Bank & Trust Co. v. Lussier,* 211 F.3d 697, 700–01 (2d Cir. 2000). Unlike lack of personal jurisdiction, lack of subject matter jurisdiction cannot be waived and may be raised at any time by a party or by the Court *sua sponte.*[4] *Id.* "If subject matter jurisdiction is lacking, the action must be dismissed." *Id.; see also* Fed.R.Civ.P. 12(h)(3).

It is axiomatic that "[a] case is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova,* 201 F.3d at 113. "[T]he United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (internal quotation marks and citation omitted). In other words, the United States enjoys sovereign immunity from suit except to the extent to which, and under the terms of which, it consents to be sued. *See Millares Guiraldes de Tineo v. U.S.,* 137 F.3d 715, 719 (2d Cir.1998) (citing *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)).

**B. Standard of Review, Rule 12(b)(6)**

When a court reviews a motion to dismiss for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6), it must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC,* 595 F.3d 86, 91 (2d Cir.2010) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal,* setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Although "legal

---

4. Though plaintiffs argue that FEMA's motion to dismiss is untimely, (Pl. Mem. of Law, ECF No. 93 at 11–13), the Court finds that FEMA filed its motion within the time limits prescribed by the Federal Rules of Civil Procedure and this Court's Individual Rules. Furthermore, even if FEMA's motion had been untimely, the Court would still be able to consider FEMA's Rule 12(b)(1) motion, because a court may determine whether it has subject matter jurisdiction over an action at any time.

conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (internal citations omitted) (quoting and citing *Twombly,* 550 U.S. at 556–57, 127 S.Ct. 1955).

The Court notes that in adjudicating this motion, it is appropriate to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.,* 273 F.Supp.2d 351, 356–57 (S.D.N.Y.2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom., Lentell v. Merrill Lynch & Co.,* 396 F.3d 161 (2d Cir.2005), *cert. denied,* 546 U.S. 935, 126 S.Ct. 421, 163 L.Ed.2d 321 (2005); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs'

claim."); *Brodeur v. City of New York,* No. 04 Civ. 1859(JG), 2005 WL 1139908, at *2–3, 2005 U.S. Dist. LEXIS 10865, at *9–10 (E.D.N.Y. May 13, 2005) (court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

### III. Discussion

#### A. Subject–Matter Jurisdiction

FEMA moves pursuant to Rule 12(b)(1) to dismiss plaintiffs' claims against it for lack of subject matter jurisdiction, asserting that plaintiffs' claims under the NFIA are barred by sovereign immunity. FEMA argues that the court lacks subject matter jurisdiction over plaintiffs' breach of contract and non-tort claims, because the "United States may be sued only if it has clearly consented to be sued" and here "there has been no waiver of sovereign immunity under the NFIA for Plaintiff to bring this action against FEMA." (FEMA's Mem. of Law, ECF No. 82 at 8.) For the reasons that follow, the Court agrees and dismisses plaintiffs' breach of contract and non-tort claims under Rule 12(b)(1).

 As discussed above, it is well-established that the United States is immune from suit unless it consents to be sued. *United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990). This immunity extends to federal agencies and officers acting in their official capacities. *F.D.I.C. v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Dotson v. Griesa,* 398 F.3d 156, 177 (2d Cir.2005); *Gildor v. U.S. Postal Serv.,* 376 F.Supp.2d 284, 287 (N.D.N.Y.2005), *aff'd,* 179 Fed.Appx. 756 (2d Cir.2006). The NFIA contains a partial waiver of sovereign immunity for suits against FEMA for denial of insurance cov-

erage. In pertinent part, 42 U.S.C. § 4072 provides:

> [U]pon the disallowance by the Administrator [of FEMA][5] of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Administrator, may institute an action against the Administrator on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in the controversy.

42 U.S.C. § 4072. The Second Circuit has held that this provision allows claimants to sue both FEMA and WYO companies in federal court for denial of coverage claims. *Palmieri*, 445 F.3d at 184–86 (concluding that under the terms of § 4072 an "action against the [Administrator's] fiscal agent is 'an action against the [Administrator]'" and that the "statutory framework ... indicates not only that private insurers are to act as fiscal agents of the government in administering the federal program, but also that all claims for benefits under an NFIA policy, whether issued as part of the Industry Program or the Government Program and whether sought from a private insurer or the government, are to be litigated exclusively in federal court.").

■ However, though the Second Circuit has not addressed the issue, courts across the country have narrowly circumscribed § 4072's waiver of sovereign immunity. Specifically, courts have consistently held that this provision does not allow WYO program policyholders to sue FEMA when the WYO company denies their claims. *See, e.g., Remy v. Hartford Fire Ins. Co.*, No. 135666, 2014 WL 6390862, at *1 (E.D.La. Nov. 10, 2014) ("In cases involving disputes arising out of a standard flood policy issued by a WYO provider, the WYO insurer, not the federal government, is the only real party of interest and is solely liable for the coverage of the standard policy that it provided."); *Kronenberg v. Fidelity Nat'l Ins. Co.*, No. 074877, 2008 WL 631277 (E.D.La. Mar. 5, 2008) (same).[6]

---

5. For the purposes of this section "Administrator" refers to the Administrator of FEMA. 42 U.S.C. § 4004(a)(3). The Court notes that this section of the Code used to read "Director" rather than "Administrator" until it was revised in 2012. Pub.L. 112–141, Div. F, Title II, § 100238(b)(1), July 6, 2012, 126 Stat. 958.

6. To the extent that plaintiffs argue that the Second Circuit's decision in *Palmieri* supports interpreting § 4072 as waiving FEMA's sovereign immunity in this case, the Court disagrees. The Second Circuit in *Palmieri* adopted the Third Circuit's reasoning in *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161 (3d Cir.1998) (*see Palmieri*, 445 F.3d at 187); subsequently the Eastern District of Pennsylvania, in *Hower v. FEMA*, No. Civ.A 04–2222, 2004 WL 2577503, *3 (E.D.Pa. Oct. 20, 2004), found that *"Van Holt* merely stated the proposition that federal courts have jurisdiction over suits by policyholders against WYO Companies, not that the limited waiver of sovereign immunity applies whenever a policy holder could sue a WYO Company." Crucially, "[t]he issue in the *Van Holt* case was 'whether the federal courts have subject-matter jurisdiction over a complaint by an insured predicated on the [NFIA] but actually sounding in tort.' The court of appeals did not address whether NFIA's limited waiver of sovereign immunity applied when a WYO Company, not FEMA, denies the claim, nor does this Court find that the court of appeals intended for *Van Holt* to be interpreted as expansively as Hower argues here." *Id.* (*citing Van Holt*, 163 F.3d at 163). This Court concludes that the same interpretation extends to the Second Circuit's decision in *Palmieri*.

An examination of the NFIP's statutory and regulatory framework supports this conclusion. First, § 4072 reads that a claimant only has a right to sue "[u]pon the disallowance *by the Administrator* of any such claim." 42 U.S.C. § 4072 (emphasis added). Courts have interpreted this to mean that the NFIA "allows a suit against FEMA only when the policy is issued by the Administration." *Mertz v. FEMA, Dept. of Homeland Sec.,* No. 10–CV–260–AC, 2011 WL 3563113, at *4 (D.Or. Feb. 14, 2011), *adopted* by 2011 WL 3563130 (D.Or. Aug. 10, 2011). "In the context of a policy issued pursuant to the WYO Program, the [Administrator] never 'disallows' a claim." *Id.* Accordingly, courts have concluded that "the waiver of sovereign immunity by Congress under the Act is not applicable to claims for monies due under policies issued by private insurers pursuant to the WYO Program." *Id.* In other words, § 4072 extends a waiver of sovereign immunity "exclusively ... where FEMA *directly* denies an application," and "does not extend to suits involving the actions of WYO companies in issuing, adjusting, or disallowing claims." *Bruno v. Paulison,* No. RDB 08–0494, 2009 WL 377300, at *5 (D.Md. Feb. 12, 2009) (internal quotations and citations omitted) (emphasis in original). Many district courts have reached the same conclusion. *See, e.g., Fowl, Inc. v. Fidelity Nat. Prop. and Cas. Ins. Co.,* No. 12–283, 2012 WL 1886013, at *2 (E.D.La. May 23, 2012) (holding that "the NFIA waiver of immunity is only for 'direct' FEMA policies, which FEMA adjusts, makes payment upon, or disallows" and "where an insured desires to bring a claim alleging coverage under a WYO policy, FEMA is not a real party in interest because Congress, via the NFIA, has only waived FEMA's sovereign immunity with respect to flood insurance policies that FEMA has issued."); *Pepe v. Fidelity Nat. Prop. and Cas. Ins. Co.,* No 11–

3746, 2011 WL 4916290, at *2 (D.N.J. Oct. 17, 2011) ("The [NFIA] contains a limited waiver of sovereign immunity where a claim was directly submitted to, evaluated, and denied by the FEMA Director, as opposed to a WYO company."); *Mertz,* 2011 WL 3563113, at *5 ("The unequivocal waiver of sovereign immunity found in the Act is limited to actions against FEMA as an insurer under a Standard Flood Insurance Policy issued by the Administration. Mertz purchased the Policy from American, not the Administrator. As such, his claim for monies due under the Policy is against American, not FEMA, and the limited waiver of immunity set forth in the Act does not apply to the case at hand."); *Zion Realty Corp. v. FEMA,* No. 07–10830–GAO, 2007 WL 4200963, at *2 (D.Mass. Nov. 27, 2007) (concluding that the Court did not have subject matter jurisdiction over FEMA because "the Director never made the disallowance of the claim. Rather, operating as a Write–Your–Own Company, Standard Fire issued the policy and denied the claim. Therefore, the statutory prerequisite to § 4072's waiver of sovereign immunity was never satisfied."); *Banks v. Paulison,* No. 06–cv–178, 2006 WL 2709002, at *3 (N.D.Fla. Sept. 20, 2006) (concluding that § 4072 waives sovereign immunity for "those actions which stem from FEMA's direct denial of an application, not actions in which a private corporation independent of FEMA denies a claim"); *Hower,* 2004 WL 2577503 at *2 (finding that the limited waiver in the NFIA "would seem to apply exclusively to the situation where FEMA *directly* denies an application, not where a private corporation independent of FEMA denies a claim.") (emphasis in original); *see also Van Holt,* 163 F.3d at 166 ("The statute provides that an insured may sue FEMA if it adjusts a claim and improperly refuses to pay benefits.").

The regulations implementing the NFIA, 44 C.F.R. §§ 61.1 et seq., also indicate that policyholders cannot bring suit against FEMA when private insurers issue their policies and adjust the claims. First, the regulations state that "[a] WYO Company issuing flood insurance coverage" is responsible for "arrang[ing] for the adjustment, settlement, payment and defense of all claims arising from policies of flood insurance is issues under the Program, based upon the terms and conditions of the Standard Flood Insurance Policy." 44 C.F.R. § 62.23(d). Further, § 62.23(g) provides that "WYO Companies are *solely responsible* for their obligations to their insured under any flood insurance policies issued under agreements entered into with the Federal Insurance Administrator, such that the *Federal Government is not a proper party defendant in any lawsuit arising out of such policies.*" 44 C.F.R. § 62.23(g) (emphasis added).

Thus, "[t]he applicable federal regulations consistently state that if a claim is issued under a WYO policy, the WYO Company stands in for FEMA and is the proper party to be sued." *Hower*, 2004 WL 2577503 at *2. The WYO program is designed, by statute and regulation, to endow the WYO companies with the authority and responsibility to adjust and process insurance claims. Accordingly, "[w]here a WYO insurance company has handled the claim adjustment and denial process and FEMA was not the decision maker, courts have been clear that the limited waiver of sovereign immunity in § 4072 does not allow an insured to bring a claim against FEMA." *Jokumsen v. FEMA*, No. 13–CV–05003, 2013 WL 3716436, at *4 (D.Neb. July 11, 2013) (collecting cases); see also *Bruno*, 2009 WL 377300, at *6 ("Courts have confirmed that FEMA is not a proper party when WYO Companies handle the claim adjustment and denial process.") (collecting cases).

Notably, FEMA's role in adjudicating an appeal of a WYO company's denial of coverage does not amount to "disallowance" sufficient to trigger § 4072's limited waiver of sovereign immunity. FEMA's disposition of an appeal under 44 C.F.R. § 62.20(b) for either Direct plan or WYO plan claims "is defined as the insurer's final claim determination, and ... constitutes FEMA acting in an administrative review capacity, not as an insurer that denies a claim." *Fowl*, 2012 WL 1886013 at *4 (citing *Mertz*, 2011 WL 3563113, at *5; *Bruno*, 2009 WL 377300, at *6) (additional internal citations and quotations omitted). In fact, courts have found that even when FEMA "render[s] an appeal decision that wholly substitute[s] a new decisional basis for [a private insurer's] grounds for nonpayment," that does not constitute a "disallowance" under § 4072. *Id.* Accordingly, in this case, FEMA's affirmation on appeal of Allstate's denial of coverage is not a "disallowance" "within the meaning of the statutory waiver of sovereign immunity." *Id.; see also Jokumsen*, 2013 WL 3716436, at *4 ("FEMA's administrative review of Metropolitan's disallowance does not trigger the limited waiver under 42 U.S.C. § 4072."); *Gottlandsini v. Fugate*, No. 11–11907–RWZ, 2012 WL 3860594, at *2 (D.Mass. Sept. 5, 2012) ("FEMA's upholding of Hartford's denial does not convert FEMA into the party making the denial."); *Mertz*, 2011 WL 3563113, at *5 ("The fact that FEMA reviewed the claim does not turn the WYO Program policy into a policy written by the federal government."); *Bruno*, 2009 WL 377300, at *5–6 (noting that "FEMA's administrative review of Nationwide's disallowance does not trigger the limited waiver under 42 U.S.C. § 4072.")

In this case, the Fosters purchased their flood insurance policy directly from Allstate, filed their claim for coverage related

to the damage to their residence sustained during Hurricane Sandy with Allstate, and Allstate agents adjusted, and ultimately denied, the plaintiffs' claim. FEMA's only involvement with the Fosters' claim was adjudicating their appeal of Allstate's disallowance of the claim under 44 C.F.R. § 62.20. Given that FEMA did not issue the SFIP and only served in an administrative function in adjudicating plaintiffs' appeal, the Court concludes that the limited waiver of sovereign immunity under § 4072 does not apply and the Court lacks subject matter jurisdiction over plaintiffs' claims against FEMA.[7] Accordingly, plaintiffs' breach of contract claim and remaining non-tort claims against FEMA are dismissed under Rule 12(b)(1).[8]

## B. Failure to State a Claim Upon Which Relief Can be Granted

■ Plaintiffs also bring a number of tort claims against FEMA under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680, including claims of state law negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. FEMA argues that plaintiffs have failed to adequately plead plausible tort claims because they failed to exhaust their required administrative remedies under the FTCA, before filing this action. For the reasons that follow, the Court agrees and dismisses plaintiff's tort claims under Rule 12(b)(6).

The Supreme Court has clearly stated that the FTCA "provides that a tort claim

7. Considering similar cases, courts have consistently concluded that they lacked subject matter jurisdiction over FEMA. *See e.g., Pepe,* 2011 WL 4916290, at *3 ("Since FEMA neither issued the SFIP to Plaintiff nor participated in the denial of her claim, the conditions for the limited waiver of sovereign immunity in 42 U.S.C. § 4072 are not met. Accordingly, this Court lacks subject matter jurisdiction over Plaintiff's claim against FEMA and FEMA's Motion to Dismiss will be granted."); *Bruno,* 2009 WL 377300, at *5–6 (dismissing claims against FEMA for lack of subject matter jurisdiction, concluding that "[t]here is no indication that FEMA played any role or committed any act that would trigger the limited waiver under 42 U.S.C. § 4072" where plaintiff purchased his flood insurance from the WYO Company, the WYO company "processed [plaintiff's] claim and finally disallowed it," and FEMA affirmed the disallowance when plaintiff appealed under § 62.60); *Kronenberg,* 2008 WL 631277, at *1–2 (granting FEMA's motion to dismiss the claims against them for lack of subject matter jurisdiction because plaintiffs "did not obtain their policy from FEMA" and FEMA did not "play[ ] any part in adjusting or denying their claims.").

8. Plaintiffs argue at a minimum that FEMA's motion to dismiss should be stayed pending additional discovery "regarding FEMA and/or FEMA's agent's involvement with both the granting of the Plaintiffs' claim and thereafter the refusal to pay said claim and the request for reimbursement" and regarding "whether the CSC [the CSC Covansys Corporation] was an agent of FEMA or whether they were an agent of Allstate when at the time the decision was made to both pay the Plaintiffs' claim and thereafter to deny the Plaintiffs' claim." (Pl. Mem. of Law, ECF No. 93 at 13, 16.) In their opposition, plaintiffs assert that "[a]t the time of the loss, the CSC was contracted with both FEMA and Allstate." (*Id.* at 10.) CSC serves as FEMA's Direct Servicing Agent and "provides day-to-day servicing of polices of flood insurance issued directly by FEMA pursuant to the NFIP." (Pl. Exhibit 12, ECF No. 100, Section J, Att. 1, ¶ A.1.) In its contract with Allstate, CSC provides "Allstate's and its affiliates' services … with respect to Written Polices underwritten, issued, offered or sold by Allstate" under the WYO program and its primary tasks include "all activities and functions required to provide on-going day-to-day flood operations." (Pl. Exhibit 15, ECF No. 100–1, ¶¶ 2.1, 3.2.) After reviewing the complaint and the parties' affidavits and exhibits, and interpreting them in a light most favorable to the plaintiffs, the Court finds nothing remotely suggests that CSC was working as an agent of FEMA when the plaintiffs' claims were adjudicated and ultimately denied. Accordingly, the Court concludes that additional discovery on this issue would be a fishing expedition, and is not warranted.

against the United States 'shall be forever barred' unless it is presented to the 'appropriate Federal agency within two years after such claim accrues' and then brought to federal court 'within six months' after the agency acts on the claim." *Wong,* 135 S.Ct. at 1629 (quoting 28 U.S.C. § 2401(b)); *see also* 28 U.S.C. § 2675(a). "The administrative exhaustion requirement derives from a cardinal principle of law—that the United States, as sovereign, is immune from suits in the courts of law." *Mosseri v. F.D.I.C.,* Nos. 95 Civ. 723(BJS), 97 Civ. 969(BSJ), 1999 WL 694289, at *7 (S.D.N.Y. Sept. 8, 1999). Failure to comply with this requirement results in dismissal of the suit. *See McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("The FTCA bars claimants from bringing suits in federal court until they have exhausted their administrative remedies. Because petitioner has failed to heed that clear statutory command, the District Court properly dismissed his suit."); *see also Celestine v. Mount Vernon Neighborhood Health Ctr.,* 403 F.3d 76, 82 (2d Cir.2005) ("The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in district court."); *Adams by Adams v. United States Dep't of Housing and Urban Dev.,* 807 F.2d 318, 319–20 (2d Cir. 1986); *Willis v. United States,* 719 F.2d 608 (2d Cir.1983); *Keene Corp. v. United States,* 700 F.2d 836, 841 (2d Cir.1983); *Rawlins v. M & T Mortgage Corps.,* No. 05 Civ. 2572(RCC), 2005 WL 2143334, at *4 (S.D.N.Y. Sept. 1, 2005); *Harrison v. Lutheran Med. Ctr.,* No. 05 Civ. 2059(CBA), 2005 WL 1801626, at *2–3 (E.D.N.Y. July 27, 2005); *Liebers v. St. Albans Med. Ctr.,* No. 99 Civ. 6534(JG), 2000 WL 235717, at *1 (E.D.N.Y. Feb. 25, 2000); *Solomon v. United States,* 566 F.Supp. 1033, 1035 (E.D.N.Y.1982). Additionally, the Supreme Court recently held that the FTCA's time bars "are nonjurisdictional and subject to equitable tolling."

*Wong,* 135 S.Ct. at 1638. A party, therefore, may avoid having a suit barred under the exhaustion requirement of the FTCA for failing to file a timely administrative claim if he " 'pursued his rights diligently but some extraordinary circumstance' prevents him from meeting a deadline." *Id.* at 1631 (quoting *Lozano v. Montoya Alvarez,* —— U.S. ——, 134 S.Ct. 1224, 1231–32, 188 L.Ed.2d 200 (2014)).

Here, there is nothing in the complaint to suggest that the plaintiffs exhausted their administrative remedies under the FTCA. In fact, in their opposition brief, the Fosters readily acknowledge that they did not file an administrative claim with FEMA before bringing this action. (Pl. Mem. of Law, ECF No. 93 at 17–18.) Nonetheless, plaintiffs argue that presentment and exhaustion in this case were "simply unnecessary" and they were "in no way ... obligated to pursue any said remedies in this action," because any attempt to pursue "administrative remedies would be futile." (*Id.*) However, plaintiffs have "alleged no facts and presented no evidence that suggests that exhaustion of these remedies would have been futile." *Lubrano v. U.S.,* 751 F.Supp.2d 453, 454 (E.D.N.Y.2010). Instead, plaintiffs merely contend that FEMA would inevitably deny their insurance claim, given that FEMA issued a directive in 2013 to WYO companies advising them to actively pursue litigation against overpaid claimants. (Pl. Mem. of Law, ECF No. 93 at 18–19.) However, courts in this circuit have held that " '[u]ntil [an agency] has acted and actual bias has been demonstrated, the orderly administrative procedures of the agency should not be interrupted by judicial intervention.' " *Lipkin v. S.E.C.,* 468 F.Supp.2d 614, 616 (S.D.N.Y.2006) (denying the plaintiff's request to "recognize an exception to the exhaustion requirement because filing an administrative claim would be futile" solely based on vague

allegations of bias by the SEC) (quoting *Touche Ross & Co. v. S.E.C.*, 609 F.2d 570, 575 (2d Cir.1979)). Accordingly, the Court finds that the plaintiffs' broad claim of futility is not sufficient to excuse their failure to comply with the FTCA's present-ment requirement.[9]

Accordingly, given that plaintiffs, by their own admission, did not present a claim or exhaust their administrative rem-edies under the FTCA, and that "[p]lain-tiffs cite no precedent, and this Court is aware of none, in which a district court has permitted a plaintiff to proceed with an FTCA claim without exhausting adminis-trative remedies," *Lipkin*, 468 F.Supp.2d at 616, the Court concludes that plaintiffs' claims under the FTCA against FEMA must be dismissed pursuant to Rule 12(b)(6) for failure to exhaust their admin-istrative remedies. *Sherman–Amin–Braddox:Bey v. McNeil*, No. 10–CV–5340 (ARR)(JMA), 2011 WL 795855, at *2 (E.D.N.Y. Feb. 25, 2011) ("Plaintiff bears the burden of pleading compliance with the FTCA's exhaustion requirement.") (citing *In re "Agent Orange" Product Liability Litigation*, 818 F.2d 210, 214 (2d Cir. 1987)). Therefore, plaintiffs' claims of negligence, intentional infliction of emo-tional distress, and negligent infliction of emotional distress are dismissed under Rule 12(b)(6).

## IV. CONCLUSION

For the foregoing reasons, the Court grants FEMA's motion to dismiss the Fos-ters' NFIA claims under Rule 12(b)(1) for lack of subject matter jurisdiction. The Court also dismisses the Fosters' FTCA claims under Rule 12(b)(6) for failure to exhaust administrative remedies. The

Clerk of the Court shall enter judgment accordingly.

SO ORDERED.

---

**9.** Plaintiffs do not raise the issue of equitable tolling, and the Court does not see any basis to toll the statute of limitations based on the complaint.